Good afternoon everyone. Welcome to the Inland Appellate Court First District, 6th Division. We're going to ask that the lawyers who are here for the first case just step up briefly, tell us who you are and whom you represent. Good afternoon and if it pleases the court, my name is Diane Silverberg and I appear today on behalf of the defendants' appellees. Good afternoon, your honors. Bob Perada, P-O-R-A-D-A, appearing on behalf of the plaintiff Appellant and currently disregarding Abraham Lincoln's admonition. I am also the plaintiff. Thank you. Alright, thank you Mr. Perada. Why don't you just stay there for a moment. Under Illinois Supreme Court Rule 352B each side has 20 minutes for the main argument, there's 10 minutes for rebuttal. We may modify that if we have a lot of questions or if the arguments become repetitive, so keep in mind it's flexible. Please remember to speak loudly. Our microphones do not amplify very well, they're really here just to keep the recording. And please understand we have read the briefs and we are familiar with the facts of the case, so devote your time to your strongest argument. Mr. Perada, you can proceed when ready. Okay, may it please the court, as I said, Bob Perada on behalf of the plaintiff Appellant and in fact the plaintiff. For purposes of the record, when I use the word chancery case, I'm referring to 16CH4764. When I refer to the Markham case or M6, I'm referring to 17M6211, which is the case out of which this appeal arises. You understand that the defendant at police contend that I filed the Markham case in retaliation for them filing the chancery case. The appeal arises from the trial court's July 18, 2017, full and complete disposition of the Markham case on its merits when the trial court granted Defendant's 2619 motion based upon the SLAP statute and Defendant's 2615 motion. And again, I remind the court that the July 18, 2017 order disposed of all of Plaintiff's claims on the merits, granted the 2615, granted the 2619, and thus was a final and appealable order and that is going to be germane to the discussion regarding the subsequent activities of the court following my notice of appeal on July 19th, the very next day. Covering it now, also on July 18th, as borne out in the supplemental record at 72, I made a motion after the court had granted the 2619 motion and granted the 2615 motion, which was to amend the complaint. That was denied. But at that point when you made that oral motion, there was no amended complaint before the court, was there? There was no proposed amended complaint before the court. Our case law seems to strongly indicate that failure to proffer an amended complaint results in forfeiture of the issue on appeal. Because in deciding whether to amend the complaint or allow an amendment to a complaint, the court must consider whether the amended complaint would cure defects in the original pleading. And without a proposal before it, the court can't exercise that discretion. Well, to that extent that there are cases, in fact some that the defendant cited in their brief, that yes, quote unquote technically, the proposed amended complaint should be proffered. I would submit that as a matter of practice and custom in the, in Cook County, at least the first amendment, the proposed first amendment is appropriate and in fact countenanced the vast majority of the time in my experience on any motion, whether it be on the 22nd floor or anywhere else, judge leave to amend, judge says leave granted. So yes, you are correct. It may be what they, what some judges will do, but we're the appellate court, so we're stuck with those darn rules that we have to follow. Agreed. Agreed. So that's an issue. But let me ask you, Mr. Corrado, would you, would it be fair to characterize your case, we love cubby holes, you know, as a basically a libel or a slander lawsuit, or how would you characterize your complaint, your M6 complaint? What cause of action is it invoking? Well, first of all, it's not going to be a libel, I mean it's not going to be a libel or a slander complaint because I did not file within the applicable two year statute of limitations. The comment that I'm referring to occurred on January 15th of 2015, I didn't file until January 11th of 17th. So it's not a libel, slander, defamation case. It does have libel, slander, defamation underpinnings. I'm referring to SEPA record at 64 when I advised the court that it was an intentional infliction of emotional distress case. So in answer to your question, it's a negligence case based on statements that they made. Well, it's not only statements, Judge. It's also, I know you've looked at the complaint, it's this pattern of conduct of this young woman over a period of time before and after and in fact subsequent to January 15th of 2015. The statement that she made, that my behavior was illegal, which suggests criminality, is only part of the equation here. There was an ongoing, and this isn't my complaint, there was an ongoing pattern here, this woman would not activate my transponder, which allowed me access to the garage. So the defamation, quote unquote, defamation, libel, slander is part of the element regarding this statement. But it's not a libel, slander. If you take the position that the transponder should not have been deactivated, that sounds like a breach of contract case. In that instance, no, the position I'm taking is that the complaint is a tort complaint. You say it's illegal. Pardon? You say it's illegal. What's that? Her actions. No, no, no. You've got these blanket allegations A through F and they all say the same thing.       It's a crime. It's a crime. It's a crime. It's a crime. It's a crime. The illegal refers to A and B. Okay. The illegal, her comment about illegal refers to A and B. The rest of the allegations refer to not activating the transponder, other ways in which she interfered with my use of the parking space over the period of time around that time. But the dismissal was, the dismissal on slap grounds, the 2619 dismissal, I'm sorry, did I answer your question? Yes. Okay. I see. Yeah. The illegal was her comment, but that was only related to what she thought or said that I was doing. There are other allegations, there are other allegations in terms of, that go to the distress that are covered in the more general allegations, they're not specifically enumerated, but in did over this period of time to interfere with the use and quiet enjoyment of my parking  Mr. Brenner, what's the status of the Chancery case now? I'm sorry? What's the status of the Chancery case? The Chancery case is still pending. All right. It hasn't gone to trial and there's no dispositive motions pending? There are some dispositive motions pending, yes. And it continues to be your position that the case before us, which I'll call the M6 case, is not related to the Chancery case? It is my position that the M6 case is not related to the Chancery case, other than the the only commonality is the Chancery case involves the parking space, the M6 case involves the parking space. That's the only commonality. Well, that's just a pretty darn big commonality. So it leads me to the question, why did you file this case in Markham? And I know you're going to tell me that one of the condo board members lived in the 6th District, so therefore venue was proper, but that's not going to be my question. My question is, why didn't you just file a counterclaim in the Chancery case? Because it's a tort claim, and it would – I imagine through some period of time, Judge Larson or whoever is on Calendar 7 would have maintained it as part of the Chancery case, but eventually that case would need to be cleaved off or severed and sent to the Law Division or the First Municipal Division because it seeks law damage. So why did you decide that first of all, you don't know what the judge is going to do. When you didn't even file the case, you're telling us it would have been cleaved off and perhaps assigned to the Law Division. Number one, how do you know that? And number two, you know, it's – that's really speculative and conclusory. I would still like to know why you think the 6th Municipal District was an appropriate forum for filing something that's clearly a part of the same series of events that gave rise to the lawsuit, which brings you here today. Well, again, it's not speculative. Respectfully, it's not speculative. The Chancery case is equitable relief. My case is – But the Chancery judge has jurisdiction to hear anything that is before her. I served in Chancery for many years. Correct. I did law cases. I did breach of contract claims and, you know, just keep going down the list. If they were interrelated with the Chancery case I started with. Now, there is an option, of course, if there's a jury demand or, you know, something is easier to do in Law Division because of the judge's calendar, that's possible. But it's not necessary. In fact, most of the non-Chancery claims, the counts, you know, tend to go away with some kind of motion, which the Chancery judge is perfectly capable of resolving. So I'm not quite – No, but – Just by what you're telling me. Well, Judge, first of all, if that, you know, if the flip side to that question or the flip side to that question should be widened defendants, your question is perfect. The flip side is widened defendants moved to Consolidate. I mean, that's – Well, that's the one thing they didn't do. They lost on four-man convenience and they lost on change of venue, I think. The motion they didn't make was the motion to transfer it to Chancery as a related case. And I am not – Which is probably the motion that would have been successful. And I am not challenging the court of being disrespectful, but that's correct. The flip side of that, but if you're getting at the fact of the Markham case, which is their point, the Markham case being in some way caused by the Chancery case or in retaliation to the Chancery case, you need look no further than C-143 and C-144, which I have referred to extensively in my brief at pages 16 to 18 and in my reply brief at 11 to 13. And I'll just be brief. December 17th of 2015 is when one defendant, City Center Conduct Association, started the ball rolling with commencing the Chancery suit against me, intent to file declaratory judgment for garage parking violations. That's when the ball started. No dispute as to that. The members on the board, four of the members on the board, were not sued in Markham. Four of the people who voted to pursue the Chancery case, Dan Collins, Beth Ellison, John Friend, and Effie Temes, voted to institute the Chancery case against me. I didn't sue them. How could that be retaliation? Carolyn Bould, the property manager, and Kurt Eberhard, the property supervisor, participated in the meeting where this decision to sue was made. I didn't sue them. Okay? The other three board members were sued because of the activities, responding after Superior Law, of the activities of January 15th of 2015. And what this court needs to look at is what defendants were sued and for what reason. Okay? The people who were sued were the people who were either the direct supervisor of this young woman, well, young is the active tortfeasor, I'm going to call it the active tortfeasor, the principal tortfeasor, sued her. She had nothing to do with the Chancery suit. Why did I sue her? Because she's the actor. Her supervisor, Kate Brindise, was long gone by the time they decided to institute the Chancery suit. She didn't get sued in retaliation. She got sued because of responding after Superior Law. The three board members who were sued, who overlapped, Fleming, Navell, and Cody, they were part of the building management, I don't mean management, but on the board when Young was doing these things. Two people, Gill and Bachelard, did not participate on December 17th, 2015. They were long gone. In terms of retaliation, the snapshot we need to look at is December 17th, 2015. It's not retaliation. Let me ask you, the order that you are appealing is an order dismissing the case based on what we call SLAPP. Correct. Let me ask you to devote some time to that issue because that's really the order primarily that we have to review is whether or not the complaint was properly dismissed as a SLAPP. Now, we can also affirm on any basis in the record, so there's a different reason to dismiss that we can affirm on that basis as well. But there's a lot in the briefs before us about whether this is a properly dismissed under SLAPP or not. Correct. May I proceed? Go ahead. Okay. As set forth, the trial court applied the wrong law, Shoreline Towers v. Gassman, a 2009 first district case, which is superseded by the 2012 Illinois Supreme Court, Justice Ann Burke, unanimous decision in Sandholm v. Cooker and those numerous progeny, Ryan v. Fox, Garita v. Arena, Capehart, something with some beauty school. What are the cases? Okay. Proceed. The trial court applied the wrong law. Sandholm was not the law on January 18th, 2017. Shoreline Towers was not the law when the order was entered. Sandholm was the law. The trial court also came up with some preposterous mens rela test, and this is supplemental record 63, that he got into my head and said, well, I know what your mens rela is, and I'm just going to leave it at that because I can't explain that. The SLAPP law is controlled by Sandholm. I've quoted it extensively in my brief, paragraphs 45, 50, and 51. Sandholm changed the paradigm for SLAPP suits. Before Sandholm, the plaintiff had to prove that it wasn't a SLAPP. Sandholm changed that paradigm and set up two elements that the defendants must prove. We're talking about proof. Proof is the operative word. Not infer, not suggest, not play the victim card. Proof. Also, Sandholm has the word solely. I don't, I'm not going to say a figure, but at least six times, I callousized Justice Burke's opinion says solely. So solely and prove are an important word. The first element, other than, the first element is that by filing a chancery, defendants have to prove that by filing a chancery case, they were exercising their rights to participate in government, to obtain a favorable government action. Other than shoreline, I am aware of no other case, and defendants have not cited any, that I've heard that filing a lawsuit and participating in the court system is seeking government activity. I'm not saying it's not. It's just there's no post-Sandholm cases that say that. The cases are all free speech cases. Sandholm was the basketball coach or whatever. Regardless, let's move on. At some point, I'd like you to get to your argument about the jurisdictional issue regarding the award of attorney's fees. And I'll finish up with that. Thank you, Your Honor. Regardless of defendants' ability to prove the first element, assume that they can or did, defendants will never be able to prove the second element, which requires defendants to prove that my claims are solely based on, related to, or in response to them filing the chancery suit. In order for them to prove this element, they must prove that my suit is meritless. Meritless, without any merit whatsoever. Now, we've discussed the facts. Defendants have not proven that my claims are meritless. And I remind the panel, meritless does not pertain to 2615 pleaded. It means worthless. Okay? Defendants have provided no evidence that Young did not say that my conduct was illegal, that Young did not insinuate that my conduct was criminal. They've not produced any evidence that Young did not repeatedly interfere with the use and enjoyment of my parking space, including refusing to activate my transponder. They never did that. They didn't even address it. They didn't say, there's no affidavit from Young. I never said these things. There's nothing. They have to prove it. Not suggestions, not inferences, nothing. They have to prove it. They've not met their burden of proof. In the absence of any evidence, they haven't proven that it's meritless. I mean, we're talking about meritless. She used the word illegal. I guess they could have authenticated a rap sheet. I mean, I guess the last thing you're going to go back to is a traffic ticket I had in 1979. But even if... You've got about four or five minutes left, so let me ask you to devote your remaining time to Cunningham's question. But again, it's not retaliation. I told you about the board members. The time is important. Two more sentences. Ryan and Hytel. I filed my suit 13 months after they got the ball rolling. When they decided to file a chancery suit. All the cases talk about time. You know, or the Jim Ryan case, where he filed the next day after those reports on the television. 13 months. After they decided to file the chancery case, 13 months, I filed mine. So that's hardly proximate to be retaliatory. Justice, thank you for that. July 18th. Judge Dunford enters an order. Disposing of all issues. And I cannot say all issues. It's a finding on the merits. It's a complete and total and absolute finding on the merits. He threw me out of that room. Nothing. Not even a leave to amend. Done. Final order of disposition on the merits. They did not include any language that retained the trial court's jurisdiction. And you've read my supplemental brief that Justice Hoffman asked for. And I thank him for asking for that supplemental briefing. Because I missed it. I missed it in my brief. I didn't miss it when I filed the notice of appeal. So the order was entered. It was a complete and final disposition on the merits. They didn't include any language that allowed any further action to award the fees. And my brief goes, I gave a number of examples. But there are only two words. Karma plus attorney's fees. Or karma plus fees. Well, let me ask you. Doesn't the trial court, a party is allowed to file a petition seeking attorney's fees within 30 days of a final order? Only when it's to 137, Judge. Respectfully. Only when it's to 137. No. And it becomes a separate action. And if that's the case, you would then have to file an amended notice of appeal in this court for us to have jurisdiction over the attorney's fees issue. Isn't that correct? I disagree. The minute that I filed my notice of appeal, I mean, the trial court entered this order on July. You're saying that under no circumstances does the trial court have the, does the rules give the trial court the authority to entertain a motion for attorney's fees within 30 days after entry of a final judgment? I'm not saying that, Judge. I'm sorry. What are you saying? What I'm saying that is I disagree with you that in those, I disagree with what you just said. And this is why. I asked you a question. I didn't say anything. I asked you a question. Does the trial court have the right, the power to entertain such a motion within 30 days? Yes. But the power was taken away the minute I filed my notice of appeal the next day. I filed the notice of appeal the next day. Is there a case that says that? Is there a case that says that? Judge, it was a final order. In my brief, I know 5, 10 cases that say there was a final order. And also, my brief refers to the fact that the trial court did not retain jurisdiction. This would not be an argument unless they're putting their order plus costs or plus fees. And I do want to finish our, you've got about two minutes. Okay. I got it. And what I want to say, Judge, what they filed on August 3rd is not a post-trial motion. Okay. Only post-trial motions. Assuming your argument is correct, let's move on to, then how do we have jurisdiction over that issue? I mean, you're asking, you're basically saying if, for example, we were to... I put it. Please proceed. If, for example, this court decided that the trial court was wrong or something, we don't have jurisdiction over the fees that the trial court awarded according to your argument so that the fees would remain in effect. I mean, your argument, it comes, it brings itself to kind of a logical conclusion. I'm not sure that I follow it. Well, Judge, may I? Yes. At page one and two of my supplemental brief, I discuss that. And I do cite the cases, and they're mostly criminal cases, plus Kyle's versus Mary and Phil Academy. Although it is true that an appellate court has no authority to address the substantive merits of a judgment entered by a trial court without jurisdiction, because that's my point here. The trial court had no jurisdiction. The minute I filed my notice of appeal, that order, that was a final order. It snatched the jurisdiction from the trial court, and I cited the cases. That does not mean that the appellate court has no jurisdiction at all. Well, you filed your amended notice three months after your original notice of appeal in this court. You didn't seek leave of court to do it. So how does that work? Well, first of all, had there been a post-trial motion, which it wasn't, but had it been, I would not have even had to file the amended notice of motion because the – But that's not my question, sir. My question is, you filed an amended motion three months after in this court without leave of court. So does that revest us with jurisdiction? Does that – how does that work? Because I don't know that the rules allow that. You can't just file an amended motion at any – No, I'm sorry. An amended notice of appeal – excuse me, I misspoke – at any time you feel like. It wasn't any time I feel like. I filed it two days after the October 18th, quote-unquote, judgment order for fees. So that was three months after your original notice of appeal. Correct, but Rule 303 especially refers to filing an amended notice of appeal. Amended notice of appeal are proper and are appropriate. And I don't know what – and I don't want to say there's confusion here, but – and it'll save me from addressing this in my rebuttal if I'm lucky to have it. Counsel in her supplemental brief is talking about something filed on November 14th of 2017. Nothing was filed on November 14th of 2017. Perhaps that's where the confusion – I'm not saying you're confused, but my notice of appeal was filed one day after the final order was entered disposing of all of my claims. My amended notice of appeal was filed two days after the purported judgment order. And again, Rule 303 allows – in fact, Rule 303 says you can file an amended notice of appeal after the last proceeding in the trial court. And also – and I understand this, but I'm also going to say that in some – had this been a post-trial motion – and again, I think that – not to the confusion, but the problem here is what they filed a petition for fees is not a post-trial motion. It was not seeking a relief from a judgment, vacating a DWP, a motion for reconsideration, anything. You've made that point, so we understand your point. Let's ask you to conclude, please. Okay. And do I have time for rebuttal? Yeah, you will have a few minutes for rebuttal. Okay. The – really, the key here is the issue of slap suits. Because the 2615, the complaint – you know, the complaint is a gotten variety tort complaint. It's duty breach, causation injury. It certainly pleads facts, doesn't plead conclusions. So the 2615 denial was improper. There are no pleading defects. Or if they are, they've not been addressed in the – before the trial court, other than the fact that I say that there is respondeat superior, they say there's not. The key here is the slap. And again, I submit when you – I know you've read Santorum. I know you're going to read those paragraphs again. But really, there are – as I can see it, I don't see how there's any more slap suits or many slap suits in Illinois. Because that second prong of the burden is so forceful and so great and so demanding. They have to prove that my case was meritless. They have to prove – And with that comment being repetitive from what we've heard already, I'm going to declare your argument at an end and withdraw from opposing counsel. All right? Thank you, Mr. Justice. Thank you. Good afternoon again. Pleased as the court. Diane Silverberg on behalf of the Defendant Appellees. If I may take just a few moments to address some of the questions that I heard the court to ask, perhaps I can cut to the chase then on my argument. Starting with your first question, there was an issue about whether or not the amended complaint had been proffered such that the court could make a determination about whether there were – about the materiality of the allegations and whether they would in fact address the deficiencies that were noted in the complaint. And as counsel conceded, he did not file or proffer an amended complaint in this matter. And moreover, while there are some cases that will permit an oral motion to be made so that they can have an opportunity to amend, in those circumstances, the reported cases have found that there has to be a showing of materiality in that oral argument. And I would submit if you go back and look at the record here, there was no such proffer of materiality. To the contrary, counsel simply asked, is that with leave to amend, and the court said no. So there was no demonstration of the merits of any amendment. There was also discussion about a pattern of conduct of a young woman. And I for a moment forgot that one of the names of the defendants here is in fact young. Nowhere in the complaint will you notice that she is identified as the speaker. Rather, those allegations are repeated identically for each and every person. So I heard things today that I have heard for the first time, including that the complaint is not properly characterized as one for libel or slander because that's time barred. However, if you look at some of what I have quoted in my brief, plaintiff's own characterization of the complaint were that they were for intentional infliction of emotional distress, intentional, and I quote, da-da, da-da, da-da, with respect to libel, slander, and defamation. So at the lower court level, in fact, the plaintiff did characterize his complaint as one for libel and slander, among other things, and he certainly didn't characterize it as a negligence complaint. Rather, he went on to talk about how this was just a garden variety tort complaint that maybe he picked up from the first guy he worked for and he dialed it up a little bit. That being said, Ms. Silverberg, was the issue of a stash possible barred by a stash of limitations brought up in the court below? It was not. To be honest, we couldn't figure out what he was alleging. We really couldn't. And that was one of the bases of the motion to dismiss brought pursuant to 2619.1. It was or was not a stash of limitations? A stash of limitations was not raised. That's what I thought. I didn't think it was raised. I would also respectfully submit that it is impossible to take the position as Mr. Prada nonetheless did, and I think the Justices saw this, to take a position that the claims that were brought in the chancery action bear no resemblance to those that were brought in Markham. And while I would like to go through and address the two different things that a defendant who prevails on a slant motion must show, I do want to point out that I think it is a reasonable assumption or inference to draw from the fact that that complaint of Mr. Prada's was filed all the way out in Markham, that it was done to increase the cost to the defendants to defend against this action, to punish them, and to harass them for having deigned to bring the lawsuit against him in the first instance to determine the legality of this parking arrangement. And I want to highlight, the parking arrangement's a big deal because in these big condo associations, once you get a transponder and you can gain access to the building, you're in. So this is a safety consideration that the association took very seriously. And as alleged in the pleadings that are in part of the record, the association and its board members, some not sued, others were, for three years tried to address this issue with Mr. Prada. So I would submit that there is quite a bit of circumstantial evidence before you and I would like to address it in turn that suggests that this was indeed a slab proceeding. Now, on a slab case, we have to show two things. We have to show that the underlying case was meritless and we have to show that there was solely an intent to harass or punishment or otherwise to chill the right of the underlying party, that is the movement, here the defendants, to exercise their right to petition the government. And I would submit that this court, that the circuit courts of this state are in fact courts of the state. That leads right into my question. What's your best case for the proposition that petitioning the government includes filing a lawsuit? Well, I don't see that it has been addressed directly but intuitively and logically I would say there's no reason it can't. And I think that this very case highlights precisely why perhaps we should make law that is you should make law on this issue because it seems clear based on the circumstantial evidence and perhaps that's what the trial court was referring to when he talked about mens rea that the intent here was in fact solely to punish the parties. And the punishment was for bringing that initial lawsuit. Is the remedy the slab statute or is the remedy this panoply of things we have in the Code of Civil Procedure and the Constitution and Supreme Court rules 137 etc. etc. Because as I understand slab this all started while I was practicing law and I always thought that the intent of the law was to protect people who were like community activists who would stand up in a meeting and say I don't want this high rise built next to my house and then a developer with a giant budget of legal teams would go after them and sue them for saying nasty things about them and that this was intended to protect that kind of activity as opposed to being a remedy for counter litigation and I think you correctly indicated there isn't a case out there that quite says that you can use a slab as a defense when the underlying problem is another lawsuit. Correct. Well I might suggest that this may not be so dissimilar from the situation where RICO for example when its origin was originally thought of as something that was intended to quell criminal conspiracies and behaviors and things of that sort but it did eventually evolve into something that gives rise to a civil remedy. I would submit here that there is no logical difference between an individual's defying the association and its authority and its right to, in fact, its obligation when it finds that there has been a violation of the governing documents to, at their notice and an opportunity to be heard to fine an individual for such a thing. So here I would submit that when the association dared to confront Mr. Parada by filing a lawsuit he proceeded to file this lawsuit way out in Markham clearly to retaliate and what makes this even more compelling is that at this moment you say clearly to retaliate Mr. Parada says that he was just zealously acting in an adversarial way as most lawyers would do in defending himself and in fact bringing an adversarial action against the defendants which he felt was warranted. What's your response to that? I think my response to that and in some respects it takes the words out of the mouth of the trial court the trial court found that there was no reason that this shouldn't have been filed as a counterclaim or a third party complaint in the Cook County matter pending over at the Daly Center. I hope I'm pointing in the right direction. Instead it was filed out in Markham and I think that that decision is very telling. To you that's one of the deciding or determining factors that this is a SLAPP suit because it was filed in such a remote location that it was designed to cause you to travel or what? One of the considerations in a SLAPP lawsuit is is it designed to increase the cost of defense and certainly for a law firm that is based in Chicago or Mundelein going out to Markham is going to increase the amount of attorney's fees to get out to that jurisdiction. Yet our office is right across the street from the Daly Center. I would submit that that absolutely was a factor and what is a matter of public record is that after there was a lawsuit that he filed in Linn County. I think that the filing in Markham while not in and of itself dispositive is certainly one of the factors that this court properly considers in making a determination based on circumstantial evidence. We can't be inside Mr. Pratt's head to know 100% was this his intent? All we can do is put before you the circumstantial evidence. And I would submit that there's quite a bit of that. Let's talk about the word evidence for a minute because we're dealing with a 619 motion. Yes. Alright. Mr. Pratt argues that the most recent case law in the direction we have from the Supreme Court keeps emphasizing the word proof which seems to be a word in a vocabulary which doesn't fit well with 619 motions because it seems to indicate there would be some need for an evidentiary hearing. Correct. Or it would go on after a trial or some kind of interim hearing before a trial to flesh out what the motivation was and whether it fits within this slab box so to speak. He's arguing you can't do this on a 619 motion. Well, I would submit that the case law says it should be on a 619 basis. And there is also in the case law under the slab cases a remark that this is intended to be an expedited proceeding. We know that we have time constraints in the trial court's resolution of a slab statute. So while yes, there is some evidentiary weighing that goes on, which is anathematic to 619 generally, I would submit that that is precisely what's called for here. In some respects what makes the weighing of the evidence easy here is that we did submit evidence. We submitted evidence to the effect that Mr. Parada had threatened to file lispendence actions against all of the unit owners at the association. And only when he apparently realized that that would not be appropriate did he then decide to proceed forward with the lawsuit in Markham. There was also evidence adduced of declaration in this case. And the fact that there is an participation provision in the declaration that would have prevented, under the facts that were alleged, the liability that the defendant or that the plaintiff was seeking to allege against the defendants in this matter. I would also submit that the only thing that we find in this complaint that resembles a fact is the word legal. We don't know what the context was of the use of that word. We don't know who said it, except today he's telling us it was Ms. Young. We don't know what it was referenced to or what it was in reference to. We don't know anything such that we could have spoken to that more specifically. I'm sorry, please. Did you raise the vagueness of the complaint in your 2615 motion? Yes. And that motion was granted, although the judge did not explain why he was granting that motion as well? Other than to say it's already dismissed or something? I think the exact language is something to the effect that it was dismissed pursuant to the Act, that is the what we'll call the Citizens Participatory Act, and alternatively under 2615. I think that was the exact language, if I'm not mistaken. One of the things about the word legality is it does actually have a useful meaning in the context of the governing documents. All legality or illegality means is that there was a law in this case is the governing documents of the association. And the governing documents of the association say that you are not permitted to enter into an agreement with a non-resident regarding your parking space. And I'm paraphrasing, but that is in essence what it says. So in the event that Mr. Perotta, and we are seeking that declaration from the Chancery Court, is found to have engaged in such an arrangement, indeed it is illegal. So I would respectfully submit that nothing in this complaint gives rise to any form of merit, whether it's based on the extirpation provision, whether it's based on its inherent vagueness, whether it is based on this one word, illegal. There's simply no where there. And there are rules. I'm just pondering out loud here. Sure. If the condo documents prohibit renting out the parking spaces, and someone rents the parking space in violation that's a breach of contract, it's not a violation of a law, so as to make it illegal, it's false. If we could have found out more through the allegations of what the context was of the statement, perhaps we would have had a more direct response to that at the lower level. There are a couple other things I would like to touch on while I still have the time. Of course, if you have questions on anything I've discussed up to this point, I trust you'll chime in. Yes. And one of the things that I wanted to point out is counsel and I had apparently very different understandings about what the directive of this court was relative to the supplemental briefing that was ordered. My understanding, based on the court's use of the word this court, was that you were asking whether this appellate court had jurisdiction to hear the order that was entered as to reasonableness. And based on the questions that I heard, I don't mean to be presumptuous, but I don't mean to be presumptuous. What I mean to be presumptuous is that there was a final order entered with the understanding that the act gives rise to an award of fees, that we brought that motion and the petition for fees within the 30 days. Counsel went past the original 30 days, during which he has an automatic right to file an amended notice of appeal. He then went beyond the next 30 days, which requires a motion of the court during this we'll call safety valve period, and then thereafter, I think another 30 days beyond that into October, is when he just seemingly, in his mind as a matter of right, filed a notice of appeal. All that being said, it looks like he could have filed a second appeal from the attorney of the order, and that would have resolved the problem. Correct. We wouldn't have this procedural not. Correct. And in my experience, that is precisely what is done. Somebody would file an original notice of appeal, then they would file a second notice of appeal, giving rise to a second appellate proceeding, and at some juncture there would be a motion brought to either consolidate them, or there would be identification in the notice of appeal of there being a related case. But that was not what was done here. So I would submit that for that reason, it's inappropriate for there to be consideration, most respectfully by this court, of the reasonableness of the fees that were awarded by the trial court. I believe that I have perhaps needed further fleshing out. If the court does not have further questions, I will sit down. I'll just ask a straight question. Along the way in this very contentious and extensive litigation, did any of the judges presiding ever try to get you into mediation or anything like that? There is currently, and I don't believe I'm saying anything out of order, there is an order that has been entered in the Chancery Court, and there is one last pretrial settlement conference scheduled in this matter. Thank you. Thank you for your time. Mr. Pirana, we'll give you some, we are overdue for our next case, but we'll give you a grand total of five minutes and that will be a straight five minutes. Thank you so much to the panel again. Just a couple of things here. The record is rather extensive because of defendant's exhibits. I know you've plowed through it. I know you will go through it again. But there are a number of statements made both in all of their filings, both in the trial court and in this court, that simply are fabrications out of whole cloth. The latest that we heard today is that my complaint does not identify the actor or her actions. And I'm referring to the supplemental record, A14, A15, not the supplemental record, but my supplemental appendix. My complaint, count seven, says, I am part of January 15th defendant Yvette D. Young,  employee of city center or settler, did these things. That's in my complaint. And all my other allegations in the complaint basically flip that language saying these defendants responding at Superior were responsible for her statements. I just don't understand I just don't understand why anybody can stand up here and say that the complaint didn't say who did these things when count seven, paragraph three, says Yvette D. Young did these things. And as I said, all the other nine counts said that she did that as agent or employee of settler or the board of the members. The M6, I'm sorry I didn't know that there was any penalty for filing a case in M6, M2, M3. The next time, I mean, I do all of my work extensively in the suburbs or downstate. That was my choice. I have, and again, we're outside of the record now, but you asked counsel, I'm pursuing, not that it requires anything, but pursuing an Indiana license for reciprocity. And those cases are all M6. So I'm in M6 frequently. I don't know where that makes a difference. This issue was revisited by the trial court twice. Motion for change of venue, motion for form of non-convenience or whatever it is. I'm sorry that they don't like being sued in M6. Then they should have controlled Yvette Young. I'm sorry. Do we have local rules that allow me to file in M6? And for God's sakes, Yvette Young should be absolutely thrilled that she's getting a jury of her peers in M6 where she lives. Yes, there are no suits other than Shoreline. I'm sorry. Other than Shoreline Towers v. Gassman, there are no suits that say that filing a lawsuit is government action. Mr. Presiding Justice, you are absolutely right. The SLAPP statute is designed, and I was on the zoning board in the municipality a number of years, the SLAPP statute is designed for the resident who gets up at the podium and says, you hired this contractor and he left my lawn a mess and they're irresponsible. That's what the SLAPP goes to. It doesn't go to things of this nature. Things not in the record define the association, the Lake County suit. I'm not going to comment upon things that are in the record. What I do want to two more things. I raised this in my reply brief and Her Honor, Justice Cunningham raised the question yes, it's zealous representation. They're talking about Liz Pimmons, they're talking about filing a suit, they're talking about, that's zealous representation and that's in my reply brief at pages 1, 2, and 3. This is what lawyers do. This is what tort lawyers do. 80% of tort lawyering is puffing a lot of times. That's zealous representation. While you brought up the point, the minute you have left here and you're in your reply and I've got your reply brief in front of me. I'll read you a quote from your reply brief. Defendants' convoluted, confusing, and complicated hodgepodge of streamed consciousness ramblings, baseless accusations, ridiculous conspiracy theories, disjointed argument, and irrelevant exhibits under the guise of retaliatory motives are nothing but a charade masquerading as proof. Is that the tone that you think is appropriate for an appellate court brief? I would say I would submit that the tone is first of all, that language is exactly what was in my trial court response. In answer to your question, I would submit that it's true but I would also submit that yes, it's not it's not appropriate for an appellate court brief. Thank you for, I appreciate you calling me out on that but again, the key here is that they threw everything against the wall before this judge in M6 and that there's no evidence. The basis for that statement, Mr. Justice DeWarp, was all of these wild things Liz Pendens this, and Murtha Matt, and oh, he got in the elevator well, this isn't one of them, maybe we didn't have that case long enough. Oh, he got in the elevator and looked at me cross-eyed. That's not truth. One last thing and this is key to what you folks said and to what the trial court said and I just can't understand the logic of it respectfully. And not your logic, I cannot understand the trial court's logic but I'm going to follow up on your question. In about 10 seconds or less. The trial court says it's filed in M6 it's a slap suit, dismissed. But the trial court said, well, I don't see any reason why it couldn't have been filed in Chancery. That makes no sense. If it's a slap suit in M6, it's a slap suit in Chancery unless you wanted to unload the burden on Judge Larson, but I just can't understand that logic that, well, in M6 it's a slap suit, but had you filed it in the Chancery case whatever he said, there's no reason. Alright, thank you folks. I appreciate it. Thank you, counsel, for your arguments. This matter will be taken under advisement.